835 So.2d 1010 (2001)
Ex parte ALABAMA BOARD OF NURSING.
(In re State Board of Nursing v. Donna Jacquelyn Stejskal.)
1000768.
Supreme Court of Alabama.
December 7, 2001.
Rehearing Denied April 12, 2002.
*1011 Bill Pryor, atty. gen., and Gail Ingram Hampton, asst. atty. gen., and general counsel, Alabama Board of Nursing, for petitioner.
Alvin T. Prestwood of Volz, Prestwood, Hanan & Barganier, P.C., Montgomery, for respondent.
BROWN, Justice.
We granted certiorari review in this case to determine whether the Court of Civil Appeals erred in affirming the trial court's reversal of the revocation by the Alabama Board of Nursing ("the Board") of Donna Jacquelyn Stejskal's professional license. We reverse and remand.

Facts and Procedural History
Donna Jacquelyn Stejskal was licensed as a registered nurse in 1992. In March 1994, the Board revoked her license because she had been convicted of a felony (bank fraud) in the United States District Court for the Southern District of Alabama. She spent four months in prison and was placed on probation for five years as a result of the conviction. On May 24, 1995, Stejskal requested that her license be reinstated, and the Board denied her request. Stejskal reapplied in May 1997, and the Board granted her application for reinstatement and placed her on probationary status for 24 months.
The reinstatement of Stejskal's license was subject to specified terms and conditions outlined in the Board's order of probation. Pursuant to this order, Stejskal was required to notify immediately her employer or any potential employer of her probationary status and to provide the employer or a potential employer with a copy of the Board's order. The order further required that the employer acknowledge to the Board that it had been provided with a copy of the order and state whether it would be able to employ Stejskal and to monitor her work. Finally, the order required an employer to agree to submit reports on Stejskal's job performance to the Board on a quarterly basis.
In addition to the requirements placed upon her employer, the order required Stejskal to submit monthly "self-reports," in which she was to state her current employment as well as any change in her employment status that had occurred during the month. The Board's probation officer then cross-checked those self-reports with the reports submitted by the employer.
In June 1998, the Board alleged that Stejskal had violated several terms of her probation. The basis of the alleged violations regarded Stejskal's part-time employment. Stejskal had been employed full-time as a nurse in a cardiologist's office for three years. The cardiologist reported that she was a good employee. In addition to this job, Stejskal took a part-time nursing position with Eastern Shore Healthcare Facility ("Eastern Shore"). Stejskal maintains that because her employment with Eastern Shore was only part-time and because it did not interfere with, or cause her to terminate, her employment with the cardiologist, there had not been a "change" in her employment status, and, thus, she was not required to, and did not, report her employment with Eastern Shore to the Board. Although Stejskal testified that she reported her probationary status to Tina Webber, the personnel director for Eastern Shore at the time she was hired by Eastern Shore, Martha Howell, who was the personnel director when the Board discovered the alleged violations, stated that she was never *1012 notified that Stejskal was on probation. Stejskal submitted no signed acknowledgment by Eastern Shore indicating that it was aware of Stejskal's probation as required by the order. Additionally, Eastern Shore never provided any evaluations of Stejskal's performance to the Board's probation officer.
After the Board discovered the alleged violations, it assigned a hearing officer to collect evidence and to make a recommendation regarding Stejskal's discipline. Following a hearing on July 28, 1998, the hearing officer recommended that Stejskal be reprimanded and that her probationary status be extended by one year. However, on September 18, 1998, the Board rejected the hearing officer's recommendation and again revoked Stejskal's license.
Stejskal appealed the Board's decision to the Montgomery Circuit Court. The trial court found that the Board's decision was not supported by the evidence, stating:
"It is important to recognize that the hearing officer, after listening to all the witnesses as well as examining all the exhibits, did not recommend that any of the 3 alleged violations justified revoking [Stejskal's] nursing license. In fact, the hearing officer recommended a reprimand and a 1-year extension of [Stejskal's] probation."
Although the trial court's order identifies Judi Crume, the executive officer of the Alabama Board of Nursing, as the sole decision-maker in the decision to overrule the hearing officer's recommendation and to revoke Stejskal's license, it appears undisputed that the order of probation was issued under the authority of the entire Board.
The Board appealed to the Court of Civil Appeals, which affirmed the trial court's decision. State Board of Nursing v. Stejskal, 835 So.2d 1006 (Ala.Civ.App. 2000). The Board petitioned this Court for certiorari review, arguing that the Court of Civil Appeals' opinion conflicted with Alabama Board of Nursing v. Herrick, 454 So.2d 1041 (Ala.Civ.App.1984).
Analysis
"Judicial review of an agency's administrative decision is limited to determining whether the decision is supported by substantial evidence, whether the agency's actions were reasonable, and whether its actions were within its statutory and constitutional powers. Judicial review is also limited by the presumption of correctness which attaches to a decision by an administrative agency."
Alabama Medicaid Agency v. Peoples, 549 So.2d 504, 506 (Ala.Civ.App.1989) (citations omitted).
Section 34-21-25(b), Ala.Code 1975, provides:
"The board may ... deny, revoke, or suspend any license issued by it or to otherwise discipline a licensee upon proof that the licensee ... is guilty of unprofessional conduct of a character likely to deceive, defraud, or injure the public in matters pertaining to health or has willfully or repeatedly violated any of the provisions of this article, as defined by board rules and regulations."
The Court of Civil Appeals' opinion affirming the trial court's decision in this case relied solely on State Personnel Dep't v. Mays, 624 So.2d 194 (Ala.Civ.App.1993), and reasoned that the Board's supporting evidence was insufficient to override the recommendation of the hearing officer. In Mays, supra, the Court of Civil Appeals affirmed a trial court's order that reversed the State Personnel Board's rejection of the findings of fact and recommendations of a hearing officer. Because it found that the State Personnel Board had rejected the findings of the hearing officer without *1013 substantial justification, the Court of Civil Appeals concluded that the Board's decision was unreasonable, arbitrary, and capricious. Mays, 624 So.2d at 198. Therefore, because the Court of Civil Appeals in this case relied solely on Mays, we must conclude that the Court of Civil Appeals found the Board's revocation of Stejskal's license to be unreasonable, arbitrary, and capricious.
The Board alleges that the Court of Civil Appeals' decision in this case conflicts with its opinion in Alabama Board of Nursing v. Herrick, 454 So.2d 1041 (Ala. Civ.App.1984). In Herrick, the factual situation was quite similar to this caseit involved the suspension or revocation of the license of a licensed practical nurse. After hearing evidence and making findings of fact and conclusions of law, the hearing officer recommended a 90-day suspension of Herrick's license. As in this case, the Board adopted the hearing officer's findings of fact and conclusions of law, yet it ordered that Herrick's license be revoked. On appeal, the circuit court adopted the findings of fact of the hearing officer, reversed the order of the Board, and substituted the hearing officer's recommendation. The Board appealed to the Court of Civil Appeals, which stated that pursuant to § 34-21-25, Ala.Code 1975, "the [B]oard, not the hearing officer, has the authority to revoke or suspend any license issued by it upon proof that the [licensee] was guilty of unprofessional conduct of a nature likely to injure the public in matters pertaining to health." Herrick, 454 So.2d at 1043. Based on the facts before it, the Court of Civil Appeals determined that the Board, in revoking Herrick's license, had not exceeded the scope of its authority.
Based on the facts before us, we conclude that the Board's decision to revoke Stejskal's license was supported by substantial evidence; that it was reasonable; and that it was within the Board's constitutional and statutory authority. Pursuant to the terms of her probation, Stejskal was required to inform the Board of any change in her employment status. It is undisputed that while Stejskal was employed by the cardiologist she sought and obtained additional, part-time employment with Eastern Shore Healthcare Facility, a nursing home facility. After she was employed at Eastern Shore, Stejskal submitted four self-reports to the Board; she did not report her employment with Eastern Shore in any of those self-reports. Although Stejskal argues that the Eastern Shore position was only part-time and that it, therefore, did not constitute a "change of employment," it nevertheless constituted additional employment within the nursing field, a matter that is within the Board's discretion to monitor.
Also pursuant to the terms of her probation, Stejskal was required to notify any employer or potential employer of her probationary status and to provide the employer with a copy of the order of probation. Stejskal's employer was also required to submit quarterly reports regarding Stejskal's job performance. Although Stejskal testified that she had informed Tina Webber, the Eastern Shore personnel director who had hired her, of her probationary status, Martha Howell, personnel director at Eastern Shore at the time of the discovery of the alleged violations, testified that Stejskal had never notified her of her probationary status. Moreover, Eastern Shore did not have a copy of the order of probation in its file before it discovered Stejskal's probation violation, and Eastern Shore never submitted any reports to the Board.
Stejskal had been convicted of bank fraud, a crime involving theft and dishonesty. Because a nurse has access to many things of value, such as drugs, supplies, *1014 and the personal property of patients, the Board chose to monitor Stejskal's return to the practice of nursing. Because of the continued dishonesty regarding her employment during the last few months of her probation, the Board again revoked Stejskal's license.
Because Stejskal violated the specific terms of her probation, the Board acted within its discretion in revoking her license and the trial court erroneously reversed its decision. Thus, we hold that the Court of Civil Appeals' affirmance in this case conflicts with Alabama Board of Nursing v. Herrick, 454 So.2d 1041 (Ala.Civ.App. 1984). Accordingly, we reverse the judgment of the Court of Civil Appeals and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON, SEE, LYONS, JOHNSTONE, WOODALL, and STUART, JJ., concur.
HARWOOD, J., concurs specially.
HARWOOD, Justice (concurring specially).
I concur fully with the main opinion. I write specially only to offer the following observations and considerations.
None of the cases cited by the parties or in either the opinion by the Court of Civil Appeals or Judge Crawley's dissent from that opinion involves precisely the same factual and procedural setting we are now called upon to review. Specifically, in none of those cases had the licensee already had his or her license revoked and then had it reinstated conditionally for a prescribed period of probation. Neither the parties nor the Court of Civil Appeals has questioned the authority of the State Board of Nursing to reinstate a revoked license conditionally for a stated period of probation, subject to the terms and conditions specified for that probation. Section 34-21-25(b) authorizes the board to "deny, revoke, or suspend any license issued by it or to otherwise discipline a licensee upon proof that the licensee ... has been convicted of a felony...." Subsection (g) provides that "[i]f the accused person is found guilty of the charges, the board may refuse to issue a license, may revoke or suspend a license or may otherwise discipline a licensee. A revoked license may be considered for reinstatement after one year in accordance with board rules."
In this case, Ms. Stejskal had been convicted of a felony, the Board had revoked her registered-nurse license, and then had rejected her initial application for reinstatement. It granted her second application for reinstatement, but only on the condition that she observe prescribed conditions of probation for a 24-month period. The Board subsequently revoked that conditional reinstatement, based upon its finding that Ms. Stejskal had violated certain conditions of her probation. It is important to note that the Board's findings of fact in this regard precisely parallel those of the hearing officer appointed to conduct the initial proceedings arising out of the charges of probation violation. In particular, the hearing officer found that Ms. Stejskal had "violated the term of probation that required her to notify the Board in writing of changes in employment, in that she failed to notify the Board of her employment with Eastern Shore Health Care which began on or about December 26, 1997, as a second job," and that she "also failed to disclose her employment [with] Eastern Shore Health Care in self-reports mailed to the Board after she began working at the facility." Further, the hearing officer found that Ms. Stejskal had violated the term of her probation that required her to have her employer notify the Board on the employer's letterhead within 14 days of employment of its receipt of a copy of the order of the Board. The *1015 hearing officer also found that Ms. Stejskal's conduct constituted ground for disciplinary action for violation of Ala.Code 1975, § 34-21-25, and Alabama Board of Nursing Administrative Code, § 610-8-.05(e)7.
The document entitled "Findings of Fact and Conclusions of Law of Hearing Officer" was transmitted to the 13-member Board, along with a full transcript of the proceedings before the hearing officer and copies of all exhibits introduced at that hearing. The Board considered all of those materials before concluding that Ms. Stejskal had violated her probation in exactly the same respects as had been found by the hearing officer, but differed with him as to the appropriate sanction. It elected to revoke Ms. Stejskal's probation and to revoke her conditionally reinstated license. (That revocation would return her to the status of a revoked licensee who might be considered for reinstatement after one year from the revocation.) Neither the circuit court nor the Court of Civil Appeals has questioned the findings of fact by the hearing officer or those same findings of fact subsequently adopted by the Board. Rather, the circuit court simply concluded that "Ms. Crume's recommendation that Ms. Stejskal's probationary license be revoked, was not supported by the evidence presented by the hearing officer." (Emphasis added.) In this regard, the circuit court apparently misapprehended the nature of the proceedings below. Although the order issued by the Board was signed on its behalf by "Judi Crume, RN, MSN Executive Officer," Ms. Crume did not have a vote at the Board meeting, and the order of revocation was that of the 13 members of the Board.
Relying on State Personnel Department v. Mays, 624 So.2d 194 (Ala.Civ.App.1993), the Court of Civil Appeals concluded that the circuit court had correctly set aside the ruling of the Board because, quoting from Mays, "`the Board's rejection of the findings of the hearing officer was done without substantial justification and was, therefore, unreasonable, arbitrary, and capricious. § 41-22-20(k)(7), Code 1975.'" 624 So.2d at 198. In Mays, the hearing officer had concluded that there was "insufficient evidence that the incidents had occurred as charged," 624 So.2d at 196, and recommended that the employee be reinstated with back pay. The personnel board concluded that the hearing officer "had ignored evidence corroborating the account of the incident," 624 So.2d at 196, and entered an order upholding the employee's dismissal. On appeal, the circuit court found that the hearing officer had not in fact ignored the alleged corroborating evidence and noted that, because "most of the central facts in this case were vigorously disputed, this case turns upon the question of credibility." 624 So.2d at 196. The circuit court reversed the Board's decision, concluding that its rejection of the hearing officer's findings of fact was without substantial justification and was, therefore, unreasonable, arbitrary, and capricious. On appeal, the Court of Civil Appeals observed that the Board was not bound by the credibility determinations of the hearing officer, but found that the evidence the Board had cited was not "`substantial when measured against the [hearing officer's] contrary findings as well as the opposing evidence.'" 624 So.2d at 196, quoting Personnel Board v. King, 456 So.2d 80, 82 (Ala.Civ.App.1984). The Court of Civil Appeals concluded that, consequently, the Board had no reasonable justification for its determination and its action was deemed to have been arbitrary and capricious. Section 41-22-20(k)(6) and (7), Ala.Code 1975, a part of the Alabama Administrative Procedure Act, provides that upon appeal of an agency's decision to an appropriate circuit court "[t]he court may reverse or modify the decision *1016 ... if the substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:... (6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."
As noted, this is not a case where the Board has rejected the hearing officer's findings of fact. Rather, it has fully adopted those findings and has simply disagreed with the officer's recommendation of the appropriate sanction. I do not consider that the Board's decision in that regard was either clearly erroneous or unreasonable, arbitrary, or capricious, or was characterized by an abuse of discretion or was a clearly unwarranted exercise of discretion.
Although not directly analogous, the law relating to revocation of probation in criminal cases is somewhat instructive. A judge considering a charge of probation violation must be only "reasonably satisfied from the evidence" that a violation of the conditions or regulations of probation or the instructions occurred. Rule 27.6(d)(1), Ala. R.Crim. P. "If the court finds that a violation of the conditions or regulations of probation or instructions occurred, it may revoke, modify, or continue probation." Rule 27.6(e).
Ms. Stejskal's license had originally been revoked on account of her conviction of bank fraud, a felony that involved theft and dishonesty. It is certainly understandable that the Board decided to reinstate her license only on a conditional, probationary basis, believing that legitimate concerns for protection of the public reasonably required particularized monitoring of her return to practice. As the Board cogently stated in its petition to this Court, "nurses have access to many things of value such as drugs, supplies, and patient's personal property. Nurses can also engage in fraudulent activities in the workplace such as charting medications and treatments as having been administered which in fact have not been performed." The terms of probation imposed by the Board established a series of "cross-checking" mechanisms designed to allow the Board to oversee closely Ms. Stejskal's return to nursing practice to make sure that problems did not arise in any work setting.
Even in a nonprobationary status setting, a circuit court is required to regard a revocation order by the Board "as prima facie, just and reasonable and the court shall not substitute its judgment for that of the [Board] as to the weight of the evidence on questions of fact, except where otherwise authorized by statute." § 41-22-20(k). The decision of the circuit court in this case that Ms. Stejskal's violation of her probation "did not rise to any level which would [justify] revoking [Ms. Stejskal's] nursing license for life" was simply a determination by the circuit court that the sanction deemed appropriate by the Board, i.e., revocation of the conditional reinstatement of Ms. Stejskal's license, was too harsh. Likewise, the conclusion by the Court of Civil Appeals that there was insufficient evidence to support the Board's determination, with the result that the Board's rejection of "the findings of the hearing officer was done without substantial justification and was, therefore, unreasonable, arbitrary, and capricious," 624 So.2d at 198, is a substitution by that court of its judgment for that of the agency as to the weight of the evidence.
Superimposed upon all of these standards of review developed for cases of "initial" revocation by an agency of a license granted by the agency, is the special circumstance that we are not reviewing an *1017 initial revocation, but rather a decision to revoke a probationary license. That circumstance warrants increased deference to the decision of the entity that granted the probation and has the responsibility for overseeing it and choosing an appropriate sanction for probation violation. Importantly, we must remember that we are not dealing with a case where the question is whether a violation of probation was proven. The hearing officer and the Board both found multiple violations to have been proven, and neither the trial court nor the Court of Civil Appeals questioned those findings. Rather, we are simply considering whether the sanction selected by the Boardrevocation of the conditionally reinstated licensewas clearly erroneous in view of the substantial evidence on the whole record, or was otherwise unreasonable, arbitrary, or capricious, or was an abuse of discretion or a clearly unwarranted exercise of discretion. It was none of those.